E-FILED
Thursday, 21 May, 2020 05:05:26 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| BAILEY THIELE and JACK MOYLAN, individually, and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No. |
| v. | )<br>) |
| | ) JURY TRIAL DEMANDED |
| ILLINOIS STATE UNIVERSITY BOARD OF TRUSTEES, | )<br>)<br>) |
| Defendant. | ) |

## CLASS ACTION COMPLAINT

Plaintiff Bailey Thiele ("Thiele") and Jack Moylan ("Moylan") (collectively, "Plaintiffs"), by and through their attorneys, individually and on behalf of all others similarly situated (the "Class"), bring the following Class Action Complaint ("Complaint") against Illinois State University Board of Trustees ("ISUBOT" or "Defendant"). Plaintiffs allege as follows upon personal knowledge as to themselves, their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### NATURE OF THE ACTION

1. This is a class action brought on behalf of all people who paid mandatory fees for the Spring 2020 academic semester at Illinois State University ("ISU") and who, because of ISUBOT's response and policies relating to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic, lost the benefits of the education and experiential services for which their mandatory fees were paid, without having those fees and costs adequately refunded to them.

2. ISU's Spring 2020 semester began on January 13, 2020.

1

3. In or around March 2020, ISU President Dietz announced that because of the global COVID-19 pandemic, all classes would be moved online and conducted via online distance learning platforms for the remainder of the Spring 2020 semester.

4. ISU additionally instructed students to move out of on-campus housing and return to their permanent addresses for the remainder of the semester.

5. While closing ISU's campus and transitioning to online classes was the proper response to the COVID-19 pandemic, this decision deprived Plaintiffs and the other members of the Class from recognizing the benefits of access to campus facilities, student activities, and other benefits and services for which they had already paid fees.

6. Defendant has refused to provide proper reimbursement for the portion fees that fund the educational services which Defendant no longer provided as of March 7, 2020. Defendant has provided inadequate and/or arbitrary reimbursement for mandatory student fees that fund on-campus activities and services that Defendant is no longer providing, which does not fully compensate Plaintiffs and members of the Class for their losses.

7. As a result, Defendant's actions have financially damaged Plaintiffs and the Class Members. Plaintiffs bring this action because Plaintiffs and the Class Members did not receive the full value of the services paid. They have lost the benefit of their bargain and/or suffered out-of-pocket loss.

8. Plaintiffs and other members of the Class are entitled to recover equitable damages in the form of disgorgement of fees owed on a pro-rata basis, together with other damages as pled herein.

## PARTIES

9. Plaintiff Bailey Thiele is a citizen and resident of the State of Illinois. Plaintiff is enrolled as a full-time undergraduate student at ISU.

10. Plaintiff Jack Moylan is a citizen and resident of the State of Illinois. Plaintiff is enrolled as a full-time undergraduate student at ISU.

11. Defendant Illinois State University Board of Trustees is an entity created by law to act as the governing board of ISU, with the final authority in all matters affecting ISU, including exercising jurisdiction over ISU's financial, educational, and other policies. ISU's principal place of business is located in Normal, Illinois.

## JURISDICTION AND VENUE

12. This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which Plaintiffs and one or more of the other Class members are citizens of a State different from the Defendant.

13. This Court has personal jurisdiction over Defendant because it resides in this District.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because Defendant resides in this District and is a resident of the state in which the District is located.

## FACTUAL BACKGROUND

**I.    ISU Offers A Unique, On-Campus Educational Experience.**

15. ISU has a current enrollment of approximately 18,250 undergraduate students and 2,628 graduate students.[1]

---

[1] Eric Jome, *Illinois State welcomes largest freshman class in 33 years*, Illinois State University News (Sept. 4, 2019), https://news.illinoisstate.edu/2019/09/illinois-state-welcomes-largest-freshman-class-in-33-years/

16.  ISU offers over 160 major options for undergraduate students to choose from, including subjects ranging from Communications Studies, Economics, and English to Biochemistry, Agriculture, and Environmental Systems Science and Sustainability.[2]

17.  The academic experience at ISU relies on the benefits and resources of the in-person, on-campus experience in order to give students a well-rounded education. To accomplish this, ISU utilizes hands-on instruction, which requires access to facilities, technology, and equipment.

18.  A significant portion of ISU's marketing focuses on the on-campus experience students receive as members of the Redbird community.[3] Specifically, ISU boasts that students' strongest connections at ISU will come from their on-campus community, offering students over 400 ways to get involved on campus.[4]

19.  Additionally, ISU stresses the importance its "state of the art" on-campus amenities to the student experience, including its Student Fitness Center, a 170,000 square foot facility that "contributes to the overall campus experience and the continued excellence of [ISU]."[5]

20.  ISU also encourages students to enhance their experience at ISU by participating in on-campus wellness programs, sports clubs, student organizations, and various activities and events to enrich their experience and build connections to their community.[6]

---

[2] *Majors*, Illinois State University, https://illinoisstate.edu/academics/majors/ (last visited May 21, 2020).
[3] *Student Life*, Illinois State University, https://illinoisstate.edu/student-life/ (last visited May 21, 2020).
[4] *See Id.*; *Redbird Life*, Illinois State University, https://redbirdlife.illinoisstate.edu/ (last visited May 21, 2020).
[5] *Id.*; *Student Fitness Center*, Illinois State University, https://campusrecreation.illinoisstate.edu/facilities/center/ (last visited May 21, 2020).
[6] *Health & Wellness – Student Life*, Illinois State University, https://illinoisstate.edu/student-life/ (last visited May 21, 2020); *Sport Clubs*, Illinois State University, https://campusrecreation.illinoisstate.edu/sportclubs/ (last visited May 21, 2020); *Health Promotion and Wellness*, Illinois State University, https://wellness.illinoisstate.edu/ (last visited May 21, 2020).

## II.     The Spread of the COVID-19 Pandemic.

21.     Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 a "public health emergency of international concern."[7]

22.     By March 11, 2020, the World Health Organization declared COVID-19 a pandemic.[8]

23.     Travel and assembly restrictions began domestically in the United States on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place and/or stay-at-home orders, which restricted all but essential travel.[9] Other states, counties, and municipalities followed suit and issued their own shelter-in-place and/or stay-at-home orders.[10]

24.     On or about January 24, 2020, the first case of COVID-19 was identified in the state of Illinois.[11]

25.     On March 20, 2020, Illinois Governor J.B. Pritzker announced a stay-at-home order to reduce the spread of COVID-19 through the state.[12] Illinois's statewide stay-at-home order first

---

[7] *Rolling updates on coronavirus disease (COVID-19)*, World Health Organization, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen (last visited May 21, 2020).

[8] Jamie Ducharme, *World Health Organization Declares COVID-19 a 'Pandemic.' Here's What That Means*, TIME (March 11, 2020), https://time.com/5791661/who-coronavirus-pandemic-declaration/.

[9] Erin Allday, *Bay Area orders 'shelter in place,' only essential businesses open in 6 counties*, SAN FRANCISCO CHRONICLE (Mar. 16, 2020), https://www.sfchronicle.com/local-politics/article/Bay-Area-must-shelter-in-place-Only-15135014.php.

[10] Jorge Ortiz and Grace Hauck, *Coronavirus in the US: How all 50 states are responding – and why eight still refuse to issue stay-at-home orders*, USA TODAY (Mar. 30, 2020), https://www.usatoday.com/story/news/nation/2020/03/30/coronavirus-stay-home-shelter-in-place-orders-by-state/5092413002/.

[11] Lisa Schencker and Jessica Villagomez, *First US person-to-person case of coronavirus reported in Chicago, 'We believe people in Illinois are at low risk.'* CHICAGO TRIBUNE (Jan. 30, 2020), https://www.chicagotribune.com/business/ct-biz-illinois-spread-person-to-person-coronavirus-20200130-yqbxfhqotvagdmvc5ibgvvwugy-story.html.

[12] *Illinois Stay-at-Home Order Now in Effect*, NBC CHICAGO (Mar. 21, 2020), https://www.nbcchicago.com/news/local/illinois-stay-at-home-order-now-in-effect/2241919/.

took effect on March 21, 2020 at 5:00 PM.[13] As of the date of filing, Illinois's stay-at-home order remains in effect through May 31, 2020.[14]

### III. ISU's Spring 2020 Semester was Upended by the COVID-19 Pandemic.

26. Spring semester classes at ISU began on or about January 13, 2020.[15] The Spring semester ended on May 8, 2020.[16]

27. On or about March 11, 2020, ISU announced a series of actions in response to the COVID-19 pandemic, which included (1) extending spring break for students until March 23, 2020; (2) transitioning from face-to-face teaching to online instruction through at least April 12, 2020; (3) closing University-operated housing and instructing all ISU students to return to and remain at their permanent home addresses until further notice.[17]

28. On or about March 17, 2020, ISU announced further action, which included (1) announcing a transition to an alternative delivery of classes for the remainder of the semester; (2) directing all ISU students to return to their permanent home addresses for the remainder of the semester; and (3) announcing the closure of certain ISU facilities, including the Student Fitness Center.[18]

29. Finally, on or about March 20, 2020, ISU announced that, to comply with Gov. JB Pritzker's Stay-at-Home Order, ISU would be restricting access to all campus facilities to essential

---

[13] *Id.*
[14] *123 more Illinois coronavirus deaths as Pritzker extends stay-at-home order through May*, CHICAGO SUN-TIMES (April 23, 2020), https://chicago.suntimes.com/coronavirus/2020/4/23/21233011/illinois-stay-home-order-pritzker-extended-may.
[15] *Academic Calendar*, Illinois State University, https://events.illinoisstate.edu/academic-calendar/ (last visited May 21, 2020).
[16] *Id.*
[17] E-Mail from Larry H. Dietz, President, Illinois State University, to Plaintiffs (Mar. 11, 2020).
[18] E-Mail from Larry H. Dietz, President, Illinois State University, to Plaintiffs (Mar. 17, 2020).

personnel only, which included groups like the Illinois State University Police Department and emergency management and maintenance workers.[19]

30. Plaintiffs and other Class Members departed campus for spring break on or around March 7, 2020, and they were not permitted to return to campus following their departure.

31. On or about March 23, 2020, Plaintiffs and other Class Members transitioned to entirely online learning platforms and completed the remainder of the Spring 2020 semester via online learning platforms.

## IV. Defendant Has Failed to Adequately Reimburse Students for Restricted Access to Student Services.

32. Remote, online learning has deprived ISU students of access to faculty, facilities, materials, equipment, and other critical learning and community-building opportunities that render the online experience an inherently unequal substitute for the in-person, on-campus educational experience that Plaintiffs and other Class members selected when they paid Defendant mandatory fees for the Spring 2020 semester.

33. Plaintiff Thiele, a freshman at ISU who enrolled in Fall 2019, was enrolled in fifteen (15) credit hours during the Spring 2020 semester.

34. Plaintiff Thiele financed the cost of her tuition and fees through federal and private student loan services and is paying interest on every dollar paid.

35. Plaintiff Moylan, a freshman at ISU who enrolled in Fall 2019, was enrolled in twelve (12) credit hours during the Spring 2020 semester.

36. Plaintiff Moylan financed the cost of his tuition and fees through federal and private student loan services and is paying interest on every dollar paid.

---

[19] E-Mail from Illinois State University to Plaintiffs (Mar. 20, 2020).

37. In addition to tuition costs, Plaintiffs and other Class members were required to pay mandatory fees for the Spring 2020 semester, which included fees for general activity, athletics and service, the Redbird Arena, the Bone Student Center, athletic and recreational facilities, health and wellness, instructional support, and campus enhancement.[20]

38. Illinois State University charges a consolidated, mandatory fee, encompassing the fees listed above, at a per-credit hour rate. The rate for a first-year student for the Spring 2020 semester was $92.28 per credit hour.[21]

39. Plaintiff Thiele, enrolled in fifteen (15) credit hours, paid approximately $1,384.20 in mandatory fees for the Spring 2020 semester.

40. Plaintiff Moylan, enrolled in twelve (12) credit hours, paid approximately $1,107.36 in mandatory fees for the Spring 2020 semester.

41. Plaintiffs and other Class Members were effectively deprived of access to services and facilities funded by the mandatory fees beginning on March 7, 2020 and lasting throughout the remainder of the semester, which officially ended May 8, 2020. Plaintiffs were deprived access to services for nine of the sixteen weeks of the semester.

42. On or about April 24, 2020, ISU announced that it planned to issue a partial refund of mandatory fees to all students at a uniform rate of $12 per credit hour.[22] ISU's refund reflects a 13% reimbursement of mandatory fees for a semester in which Plaintiff and other Class Members were deprived of access to the services funded by the fees for over 50% of the semester.

---

[20] *Student Accounts*, Illinois State University, https://studentaccounts.illinoisstate.edu/billing/fees/ (last visited May 21, 2020).
[21] *19 | 20 Billing Information*, Illinois State University Student Accounts Office (last visited May 21, 2020), *available at* https://studentaccounts.illinoisstate.edu/downloads/billing-archives/2019-2020-billing-brochure-5152020.pdf.
[22] E-Mail from Larry H. Dietz, President, Illinois State University, to Plaintiffs (April 24, 2020).

43. Defendant's proffered mandatory fee reimbursement reflects a woefully inadequate reimbursement for mandatory fees paid for the Spring 2020 semester.

44. Through this lawsuit, Plaintiffs and members of the Class seek Defendant's disgorgement of the pro-rated portion of mandatory fees for educational and experiential services they did not receive for remainder of the Spring 2020 semester after classes moved online and access to on-campus services ceased.

## CLASS ALLEGATIONS

45. Plaintiffs bring this action as a class action, pursuant to the Federal Rules of Civil Procedure under Rule 23, individually on behalf of the proposed class ("Class"):

> All people who paid fees for or on behalf of students enrolled in classes at ISU for the Spring 2020 semester.

46. This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Federal Rule of Civil Procedure, Rule 23 ("FRCP Rule 23").

### Numerosity – FRCP Rule 23(a)(1)

47. The members of the Class are so numerous and geographically dispersed that individual joiner of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but may be ascertained by Defendant's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include US Mail, electronic mail, Internet postings, and/or published notice.

### Commonality – FRCP Rule 23(a)(2)

48. There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class, which predominate over any individual questions, including:

    A. Whether Defendant engaged in the conduct alleged herein;

    B.    Whether Defendant breached its contracts with Plaintiffs and the other Class members by retaining fees without providing the services which the fees were intended to cover;

    C.    Whether Defendant was unjustly enriched by retaining fees of Plaintiffs and the other Class members without providing the services which the fees were intended to cover;

    D.    Whether certification of the Class is appropriate under FRCP Rule 23;

    E.    Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

    F.    The amount and nature of relief to be awarded to Plaintiffs and the other Class members.

49.    Plaintiffs anticipate that Defendant will raise defenses that are common to the class.

## Adequacy – FRCP Rule 23(a)(4)

50.    Plaintiffs will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiffs and class members. Plaintiffs, moreover, have retained experienced counsel who are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

## Typicality – FRCP Rule 23(a)(3)

51.    The claims asserted by Plaintiffs are typical of the class members they seek to represent. Plaintiffs have the same interests and suffer from the same unlawful practices as the class members.

52.    Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to Rule 23.

10

**Predominance and Superiority – FRCP Rule 23(b)(3)**

53.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

54.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

**FIRST CAUSE OF ACTION**
**Breach of Contract**

55.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

56.     Plaintiffs bring this claim individually and on behalf of other members of the Class.

57.     Plaintiffs and the Class entered into contracts with ISU, which provided that Plaintiffs and other members of the Class would pay the cost of mandatory fees for or on behalf

11

of students, and, in exchange, ISU would provide services related to those fees, such as access to student activities, athletics, wellness centers, etc.

58.    Plaintiffs and other members of the Class fulfilled their end of the bargain when they paid these mandatory fees for the Spring 2020 semester, either out-of-pocket or by using student loan financing.

59.    ISU breached the contract with Plaintiffs and the Class by moving the second half of all classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus and closing most campus buildings and facilities, without reducing or refunding fees accordingly.

60.    ISU retained fees paid by Plaintiffs and other members of the Class, without providing them with the benefit of their bargain.

61.    Plaintiffs and other members of the Class have been damaged as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the value of the benefits and services the fees were intended to cover.

62.    As a direct and proximate result of Defendant's breach, Plaintiffs and the Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to disgorgement of the pro-rata amount of fees that was collected but for which services were not provided.

## SECOND CAUSE OF ACTION
### Unjust Enrichment

63.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

64.    Plaintiffs brings this claim individually and on behalf of the other members of the Class.

65. ISU has received a benefit at the expense of Plaintiffs and other members of the Class to which it is not entitled.

66. Plaintiffs and other members of the Class paid substantial mandatory fees for on-campus benefits and services, and they did not receive the full benefit of that bargain.

67. Plaintiffs and other members of the Class conferred this benefit on Defendant when they paid the mandatory fees.

68. Defendant has realized this benefit by accepting such payment.

69. Defendant has retained this benefit, even though Defendant has failed to provide the services for which the fees were collecting, making Defendant's retention unjust under the circumstances.

70. Equity and good conscience require that the ISU return a pro-rata portion of the monies paid in fees to Plaintiffs and other members of the Class.

71. Defendant should be required to disgorge this unjust enrichment.

### THIRD CAUSE OF ACTION
**Conversion**

72. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

73. Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

74. Plaintiffs and members of the Class have an ownership right to on-campus services they were promised in exchange for their Spring 2020 semester mandatory fee payments to Defendant.

75. Defendant intentionally interfered with the rights of Plaintiffs and members of the Class when it moved all classes to an online format and discontinued access to services for which fees were intended to pay.

76. Plaintiffs and members of the Class demand the return of the pro-rated portion of any Spring 2020 mandatory fees for services discontinued since ISU shut down in or around March 2020.

77. Defendant's retention of the fees paid by Plaintiffs and members of the Class without providing the services for which they paid deprived Plaintiffs and members of the Class of the benefits for which the fees paid.

78. This interference with the services for which Plaintiffs and members of the Class paid damaged Plaintiffs and Class members in that they paid mandatory fees for services that will not be provided.

79. Plaintiffs and members of the Class are entitled to the return of pro-rated portion of any Spring 2020 mandatory fees for services not provided since ISU shut down in or around March 2020.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs Bailey Thiele and Jack Moylan respectfully request that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Bailey Thiele and Plaintiff Jack Moylan as Class Representatives, and appointing Stephan Zouras, LLP, as Class Counsel;

B. Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C. Declaring that Defendant has wrongfully kept the monies paid for mandatory fees for the Spring 2020 semester;

D. Requiring that Defendant disgorge amounts wrongfully obtained for mandatory fees for the Spring 2020 semester;

E. Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused monies paid for mandatory fees;

F. Awarding Plaintiffs and the Class their reasonable attorneys' fees, costs, and expenses;

G. Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and,

H. Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Date: May 21, 2020                                      Respectfully Submitted,

*/s/ Ryan F. Stephan*
Ryan F. Stephan
James B. Zouras
Catherine T. Mitchell
Stephan Zouras, LLP
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com
Firm ID: 43734

**ATTORNEYS FOR PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

I, the attorney, hereby certify that on May 21, 2020, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

<u>/s/ Ryan F. Stephan</u>