UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| BAILEY THIELE and JACK MOYLAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-01197-SLD-TSH |
| | ) | |
| BOARD OF TRUSTEES OF ILLINOIS | ) | |
| STATE UNIVERSITY, LARRY DIETZ in | ) | |
| his individual and official capacities, and | ) | |
| JULIE ANNETTE JONES in her individual | ) | |
| and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is the Motion to Dismiss filed by Defendants Board of Trustees of

Illinois State University ("Board of Trustees" or "Board"), Larry Dietz in his official and

individual capacities, and Julie Annette Jones in her official and individual capacities, ECF No.

11.  For the following reasons, the motion is GRANTED.

## BACKGROUND[1]

The Board, an entity established by Illinois state law, 110 ILCS § 675, acts as the

governing board of Illinois State University ("ISU").  It has final authority in all matters

affecting ISU and exercises jurisdiction over ISU's financial, educational, and other policies.

Pursuant to 110 ILCS § 675/20-45(5), the Board has the authority to assess and collect student

tuition and fees.  Dietz, who holds the position of President of ISU, is ISU's Chief Executive

---

[1] At the motion to dismiss stage, the court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all
reasonable inferences in [the plaintiff's] favor."  *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016).  Thus, the
factual background is drawn from the First Amended Class Action Complaint, ECF No. 4.

Officer and oversees the university's operations.  Jones is Chairperson of the Board and acts as the presiding officer of the Board.

ISU's Spring 2020 semester began on approximately January 13, 2020 and ended on May 8, 2020; the Summer 2020 semester lasted from approximately May 18, 2020 to August 7, 2020. On or about March 11, 2020, ISU announced that it would be taking a series of actions to respond to the COVID-19 pandemic, in particular transitioning from in-person teaching to online instruction until at least April 12, 2020 and closing University-operated housing, instructing all students to return to and remain at their permanent home addresses until further notice. ISU announced further actions on or about March 17, 2020, including instructing all students to remain at their permanent addresses for the remainder of the semester, during which time they would attend class via alternative means, and closing certain facilities, such as the Student Fitness Center.  On or about March 20, 2020, ISU announced that access to all campus facilities was restricted to essential personnel only.  And on or about April 9, 2020, ISU informed students that classes offered the Summer 2020 semester would also be taught online.

Plaintiffs Bailey Thiele and Jack Moylan were enrolled as full-time undergraduate students at ISU during all times relevant to this case.  They, along with other students, left campus on or about March 7, 2020 for spring break and were not permitted to return to campus afterwards.

In addition to paying tuition, ISU students pay a mandatory semesterly fee for general activities, service, athletic and recreational facilities, instructional support, and campus enhancement.  This fee is charged to each student at a per-credit-hour rate.  For the Spring and Summer 2020 semesters, the rate was $92.28 per credit hour.  Thiele paid approximately $1,384.20 in mandatory fees for the Spring 2020 semester and $369.12 for the Summer 2020

2

semester; Moylan paid approximately $1,107.36 for the Spring 2020 semester and $267.84 for the Summer 2020 semester.  On or about April 24, 2020, ISU announced a partial refund of the Spring 2020 fees to all students at a rate of $12 per credit hour.  It did not, however, reduce or refund fees for Summer 2020.

Plaintiffs initiated this suit, individually and on behalf of all others similarly situated, on May 21, 2020, bringing claims for breach of contract, unjust enrichment, and conversion and alleging that federal jurisdiction existed under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  Compl. 3, 11–14, ECF No. 1.  They filed an amended complaint on July 7, 2020, which brings claims pursuant to 42 U.S.C. § 1983 for violations of Plaintiffs' rights under the Takings and Due Process Clauses of the United States Constitution, for breach of contract, for unjust enrichment, and for conversion.  Am. Compl. 18–22, ECF No. 4.[2]  Plaintiffs seek the certification of this case as a class action; a declaration that Plaintiffs and Class Members have a common law property interest in the portion of the fees paid for which they received no benefit; a declaration that Defendants seized and retained this property interest without notice and due process in violation of the Illinois Constitution and the Fifth and Fourteenth Amendments of the U.S. Constitution; a declaration that Defendants are financially responsible for notifying Class Members of this suit; an order requiring Defendants to refund the portions of the fees paid for which Plaintiffs and Class Members received no benefit; a permanent injunction restraining Defendants from unlawfully seizing students' money in the future; statutory relief; reasonable attorney's fees, costs, and expenses; and pre- and post-judgment interest.  *Id*. at 23–24. Defendants now move to dismiss the amended complaint in its entirety for lack of subject matter

---

[2] The Amended Complaint makes no reference to the Class Action Fairness Act, and the Court does not have the information necessary to determine whether it provides an independent jurisdictional basis for this suit.

jurisdiction and, in the alternative, for failure to adequately plead any of the claims.  Defs.' Mot. Dismiss 2–4.

## DISCUSSION

### I.   Motion to Dismiss Pursuant to 12(b)(1)

#### a.   Legal Standard

"A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint." *Bultasa Buddhist Temple of Chi. v. Nielson*, 878 F.3d 570, 573 (7th Cir. 2017). When resolving such a motion, the Court "accept[s] as true all well-pleaded factual allegations and draw[s] reasonable inferences in favor of the plaintiffs." *Id.*  The Court may look beyond the complaint's jurisdictional allegations and view other evidence submitted by the parties to determine whether subject matter jurisdiction exists. *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008).  "[A] plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Center for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014).

#### b.   Analysis

Plaintiffs allege that, because they bring claims under the Fifth and Fourteenth Amendments, the Court has federal question jurisdiction over the suit and supplemental jurisdiction over the related state law claims.  Am. Compl. 4–5.  Defendants do not dispute the existence of the federal constitutional claims but argue that the Eleventh Amendment bars Plaintiffs from bringing this case in federal court.  Defs.' Mem. Supp. Mot. Dismiss 4–5, ECF No. 12.  Plaintiffs counter that their claims are either not covered by the Eleventh Amendment or fall into exceptions to the sovereign immunity doctrine.  Pl.'s Resp. 4–9, ECF No. 16.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI.  Courts have interpreted this to mean that private individuals cannot sue the state itself, state agencies, or state officials acting in their official capacities in federal court, a doctrine known as sovereign immunity.  *Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 881–82 (7th Cir. 2012).  Three exceptions to sovereign immunity have been recognized: 1) Congressional abrogation, 2) waiver, and 3) the *Ex parte Young* exception.  *Id.* at 882.  The *Ex parte Young* exception "allows private parties to sue individual state officials for prospective relief to enjoin ongoing violations of federal law."  *Id* (quotation marks omitted).  Because the exceptions to sovereign immunity are dependent upon the type and capacity of the defendant being sued, the Court will address each group of Defendants individually.

### i.  Board of Trustees

The Seventh Circuit considers public universities' boards of trustees to be state agencies shielded by sovereign immunity.  *See Kroll v Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 908–09 (7th Cir. 1991) ("The Board . . . must be accorded the respect due a state under the eleventh amendment."); *see also Lugg v. Sutton*, 368 F. Supp. 3d 1257, 1263–64 (C.D. Ill. 2019) (noting that the Board of Trustees of ISU was "an [a]gency of the State of Illinois" but had waived its Eleventh Amendment immunity by removing a state action to federal court).  The Board of Trustees of ISU is an entity established by an Illinois statute to govern ISU, a public university, *see* Am. Compl. 4; the Board is thus considered to be an agency of the state of Illinois.  As such,

the claims against the Board may only proceed before this Court if an exception to sovereign

immunity applies.[3]

Because the Board is an agency and not a state official, the *Ex parte Young* exception is

inapplicable; waiver and abrogation are the only paths by which Plaintiffs might keep these

claims in federal court.  For a state to waive its sovereign immunity defense, its consent to suit

must be "unequivocally expressed," *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89,

99 (1984); mere failure to raise a defense of sovereign immunity does not constitute waiver, nor

can a state constructively consent to a suit, *Edelman v. Jordan*, 415 U.S. 651, 673, 677–78

(1974).  Nothing before the Court shows that the state has consented to suit; indeed, Defendants'

Rule 12(b)(1) motion to dismiss compels the opposite conclusion, *see* Defs.' Mot. Dismiss 2.

And Plaintiffs bring their constitutional claims pursuant to 42 U.S.C. § 1983, Am. Compl. 18–

19, a statute which the Supreme Court has specifically found does not abrogate state sovereign

immunity, *see Quern v. Jordan*, 440 U.S. 332, 340–41 (1979).  As no exceptions to sovereign

immunity apply, the Court finds that the Eleventh Amendment bars this suit from being brought

against the Board.[4]  All claims against the Board are hereby dismissed.

### ii.  Dietz and Jones in their Official Capacities

As noted above, the doctrine of sovereign immunity covers state officials acting in their

official capacities.  *See Quinn*, 680 F.3d at 881.  However, in *Ex parte Young*, 209 U.S. 123

---

[3] Defendants additionally argue that under Illinois state law, the Illinois Court of Claims has exclusive jurisdiction over the contract and conversion claims brought against them, Defs.' Mem. Supp. Mot. Dismiss 5–6, and that no court may exercise jurisdiction over the unjust enrichment claims, *id.* at 6.  Because the Court ultimately dismisses all federal claims against all Defendants and declines to exercise supplemental jurisdiction over the state law claims, *see infra* Section II(b)(ii), it need not address whether it lacks jurisdiction over the state law claims for these additional reasons.

[4] Plaintiffs insist that "the Supreme Court has long held that the Eleventh Amendment does not bar claims against a state where a plaintiff seeks the return of property that belonged to the plaintiff in the first place."  Pls.' Resp. Mot. Dismiss 5.  It appears, based on the case law they cite, *see id.*, they simply mean to argue that suits for injunctive relief may be brought against state officials.  This is the *Ex parte Young* exception, which has no applicability to the Board and will be discussed in reference to Dietz and Jones below.  *See infra* Section II(B)(ii).

(1908), the Supreme Court created an exception to sovereign immunity under which private parties can sue state officers in their official capacities "to enjoin prospective action that would violate federal law." *Dean Foods Co. v. Brancel*, 187 F.3d 609, 613 (7th Cir. 1999). As the *Ex parte Young* exception "is necessarily limited to prospective injunctive relief," a suit brought in federal court pursuant to the exception may not seek "a retroactive award which requires the payment of funds from the state treasury." *See Edelman*, 415 U.S. at 677; *see, e.g.*, *Ind. Prot. & Advoc. Servs. v. Ind. Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 371 (7th Cir. 2010) (finding that the plaintiff's requested relief was prospective where it sought access to records that state officials had denied them in violation of federal law).

Whether a plaintiff's desired relief is sufficiently prospective and injunctive turns on the effect the relief would have on the state, not on the type of relief the plaintiff alleges he seeks. *Quinn*, 680 F.3d at 883. Claims which purport to be prospective in nature—such as requests for injunctive or declaratory relief—that would nonetheless "impose[] upon the State a monetary loss resulting from a *past* breach of a legal duty on the part of defendant state officials," are considered to be claims for monetary damages, forestalling use of the *Ex parte Young* exception. *Ameritech Corp. v. McCann*, 297 F.3d 582, 587 (7th Cir. 2002) (emphasis in original); *see also MSA Realty Corp. v. State of Ill.*, 990 F.2d 288, 295 (7th Cir. 1993) (holding that the Eleventh Amendment barred the plaintiff's claim for injunctive relief because a favorable ruling would require "direct payments by the state from its treasury for the indirect benefit of a specific entity" and the claim for declaratory relief because it "would have [had] much the same effect as a full-fledged award of damages or restitution" (quotation marks omitted)). However, where granting the plaintiff's requested injunctive relief would merely have an ancillary implication upon the state treasury, the Eleventh Amendment will not bar the suit. *Edelman*, 415 U.S. at 667–68.

7

There is no question that Plaintiffs have alleged that Dietz and Jones in their official capacities acted in violation of federal law—the complaint brings claims for alleged violations of the Takings Clause and the Due Process Clause.  *See* Am. Compl. 2, 18–19.  Whether the effect of the relief Plaintiffs purport to seek would truly qualify it as prospective and injunctive is less clear. Plaintiffs claim that they request "prospective relief in the form of an injunction requiring . . . Dietz and Jones to return Plaintiffs' property that they continue to unlawfully retain in violation of Plaintiffs' constitutional rights."  Pls.' Resp. Mot. Dismiss 7.  But all of the claims for relief in the First Amended Complaint in essence seek the same thing: the return of a pro-rata portion of the money Plaintiffs previously paid to ISU in the form of mandatory fees.  *See* Am. Compl. 17–24.  Granting this relief "would have much the same effect as a full-fledged award of damages or restitution."  *See MSA Realty*, 990 F.2d at 295 (quotation marks omitted).  As such, the Court does not find that Plaintiffs have sued Dietz and Jones in their official capacities for prospective injunctive relief as required for these claims to fall under the *Ex parte Young* exception.  *See Dean Foods*, 187 F.3d at 613.  In the absence of any exception to sovereign immunity, the Court finds that the Eleventh Amendment bars all claims against Dietz and Jones in their official capacities; these claims are, therefore, dismissed.

### iii.  Dietz and Jones in their Individual Capacities

It is well established that sovereign immunity does not bar from federal court suits alleging constitutional violations brought against state officials in their individual capacities, even if the state officer claims to have acted within his official capacity.  *See Kroll*, 934 F.2d at 907.  However, in such cases, monetary recovery is confined only to the named defendant and cannot implicate the state or draw recovery from the state.  *See Kentucky v. Graham*, 473 U.S. 159, 166–68; *see also Kroll*, 934 F.2d at 907 ("A victory in such a suit, however, is a victory

8

against only the individual defendant; an award of damages may be executed only against that official's personal assets.").  Should the state be implicated in an award of relief against an individual defendant, sovereign immunity comes back into play, as the state has become a *de facto* defendant.  *See id.* at 907–08; *see Luder v. Endicott*, 253 F.3d 1020, 1021, 1024–25 (7th Cir. 2001) (finding, in a suit where state prison employees sued the warden in his private capacity for withheld backpay, that although monetary damages could simply be assessed against the warden, a ruling in the plaintiffs' favor would also force the state to pay the employees future additional funds, implicating the state's treasury).

Here, a ruling against Dietz and Jones in their individual capacities would not implicate the state treasury.  Plaintiffs seek the return of a portion of their mandatory fees, Am. Compl. 23–24, an award which, if granted, could be assessed against Dietz and Jones in their individual capacities.  Even if repayment of the money were beyond Dietz's or Jones's financial means as individuals, there would be no obligation on the state's part to contribute any of its own funds. *See Luder*, 253 F.3d at 1023 ("The fact that [a] state [may] choose[] to indemnify its employees who are sued in federal court is irrelevant, because it [would be] the voluntary choice of the state, not a cost forced on it by the federal-court suit." (citations omitted)).  And should the Court award the requested relief against the individual Defendants, the ruling would not compel the state to expend funds in the future for analogous payments.  *Cf. id.* at 1024.

Sovereign immunity does not bar this suit against Dietz and Jones in their individual capacities.  The Court will thus turn next to whether Plaintiffs have adequately stated claims against these two Defendants.

## II.    Motion to Dismiss Pursuant to 12(b)(6)

### a.  Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At the motion to dismiss stage, the key inquiry is whether the complaint is "sufficient to provide the defendant with 'fair notice' of the plaintiff's claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)); *see also Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (noting that courts also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice"). While "detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277–78 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When deciding on a motion to dismiss, "[t]he complaint's well-pleaded factual allegations, though not its legal conclusions, are assumed to be true," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013), and the court must also "draw all inferences in the light most favorable to the nonmoving party," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

**b. Analysis**

In their complaint, Plaintiffs bring claims pursuant to § 1983 for violations of their rights under the Due Process Clause of the Fourteenth Amendment and the Takings Clause of the Fifth Amendment, as well as claims for breach of contract, unjust enrichment, and conversion. Am.

10

Compl. 18–22.  Defendants seek the dismissal of all of these claims for failure to state a claim.

Defs.' Mem. Supp. Mot. Dismiss 7–18.  The Court will first address whether Plaintiffs have

plausibly pleaded the § 1983 claims.

### i.   Claims Brought Under § 1983

42 U.S.C. § 1983 provides that "[e]very person who, under color of [state law] . . . ,

subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or

other proper proceeding for redress . . . ."  To adequately plead a § 1983 claim, "a plaintiff must

allege two elements: (1) the conduct complained of was committed by a person acting under

color of state law; and (2) the activity deprived a person of rights, privileges, or immunities

secured by the Constitution or laws of the United States."  *Case v. Milewski*, 327 F.3d 564, 566

(7th Cir. 2003).  With regard to the first element, the Supreme Court has held that "state officials

sued in their individual capacities are 'persons' for purposes of § 1983."  *Hafer v. Melo*, 502 U.S.

21, 23 (1991).  Thus, the pertinent question is whether Plaintiffs have plausibly pleaded

constitutional violations.[5]

Plaintiffs allege that they "had a constitutionally protected property interest in the

mandatory fees for the Spring and/or Summer 2020 semester(s)" of which Defendants deprived

them without due process of law in violation of the Due Process Clause and without just

---

[5] Defendants also argue Plaintiffs have failed to plead claims individually against Dietz or Jones, as required under § 1983, citing to a case stating that *respondeat superior* liability is not available under the statute.  Defs.' Mem. Supp. Mot. Dismiss 5 (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. Pursuant to this requirement, courts have rejected § 1983 claims based upon *respondeat superior* theory of liability." (emphases in original) (citations omitted))).  It is unclear from the amended complaint whether Plaintiffs intend to bring claims against Dietz and Jones in a supervisory capacity or whether they include them as direct actors through the use of the joint term "Defendants."  *See generally* Am. Compl.  Regardless, because the Court finds that Plaintiffs have not adequately alleged the § 1983 claims, *see infra* Sections II(b)(i)(1), (2), it need not resolve this issue.

compensation in violation of the Takings Clause.  Am. Compl. 18–19.  Defendants dispute that Plaintiffs have alleged a cognizable property interest as required by these constitutional provisions, as well as argue that Plaintiffs have not satisfied the remaining elements of the claims.  Defs.' Mem. Supp. Mot. Dismiss 8–10.  Each claim will be considered in turn.

### 1.  Due Process Claim

The Fourteenth Amendment prohibits the state from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  Plaintiffs bring a procedural due process claim, Am. Compl. 18–19; for this claim to survive the motion to dismiss, Plaintiffs must plausibly plead "(1) a cognizable property interest, (2) a deprivation of that property interest, and (3) a denial of due process," *see Price v. Bd. of Educ. of City of Chi.*, 755 F.3d 605, 607 (7th Cir. 2014) (quotation marks omitted).  To demonstrate the existence of a constitutionally protected property interest, a plaintiff must show that the property in question is an "entitlement"—a "valuable right that cannot be withdrawn unless a specified substantive condition comes to pass."  *Lim v. Cent. DuPage Hosp.*, 871 F.2d 644, 646 (7th Cir. 1989) (italicization omitted).  The plaintiff "must have more than a unilateral expectation of" the property—he must "have a legitimate claim of entitlement to it."  *Bell v. City of Country Club Hills*, 841 F.3d 713, 717 (7th Cir. 2016) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

"Whether a plaintiff has a property interest protected by the Due Process Clause . . . typically is 'defined by existing rules or understandings that stem from an independent source such as state law.'"  *Dyson v. City of Calumet City*, 306 F. Supp. 3d 1028, 1040 (N.D. Ill. 2018) (quoting *Roth*, 408 U.S. at 577).  "Accordingly, federal property interests . . . usually arise from rights created by state statutes, state or municipal regulations or ordinances, and contracts with

12

public entities." *Bell*, 841 F.3d at 717 (quotation marks omitted).  However, "whether a particular state-created interest rises to the level of a legitimate claim of entitlement is a question of federal law." *Id.* (quotation marks omitted).

While not entirely clear, Plaintiffs appear in their complaint to characterize their property interest as one stemming from a contractual relationship with ISU.  *See* Am. Compl. 11–12 (alleging that based on common law rules, "Plaintiffs . . . have a protected property right in all sums that they paid to ISU for which they received nothing in return"); *id.* at 17 ("Plaintiffs . . . are entitled to the disgorgement and return of either their payment of the mandatory fees or the return of the reasonable value thereof."); *see also id.* at 19–20 (alleging that "Plaintiffs . . . entered into contracts with ISU, which provided that Plaintiffs . . . would pay the cost of mandatory fees for or on behalf of students, and, in exchange, ISU would provide services related to those fees" and that "Plaintiffs . . . fulfilled their end of the bargain when they paid those mandatory fees" but that "ISU breached the contract" by "retain[ing the] fees . . . without providing [Plaintiffs] with the benefit of their bargain").

In the response to the motion to dismiss, Plaintiffs argue that because ISU classifies mandatory student fees as an "agency fund," Pls.' Resp. Mot. Dismiss 15 (quotation marks omitted), held by ISU as custodian for the students, and because "[a]gency funds are restricted in use to the specific purposes for which they are charged," ISU must use the student fees "for the purpose in which they were charged," *id*. ("In other words, Defendants' possession of the funds was not license for them to do with the funds as they pleased.").  While again not clear, this appears to be in furtherance of a claim that Plaintiffs' property interest stems from a contract with ISU for the provision of services in exchange for the payment of the mandatory fees, with the added clarification that the payments were required to be used only for the "specific purposes

for which they [were] charged," *id.* at 15; *see id.* at 16 ("Plaintiffs had a contractual entitlement that their consideration would be returned to them upon Defendants' failure to perform."); *id.* at 17 ("Plaintiffs' constitutional claims are a proper avenue to the same sought-after result of a breach of contract claim: just compensation for the taking of Plaintiffs' property.").[6]

The Seventh Circuit has held that "[i]f a contract creates rights specific enough to be enforced in state court by awards of damages or specific performance, then it creates a legitimate claim of entitlement; and if it creates such a claim, it is 'property.'" *Mid-Am. Waste Sys., Inc. v. City of Gary, Ind.*, 49 F.3d 286, 290 (7th Cir. 1995). "It is held generally in the United States that the basic legal relation between a student and a private university or college is contractual in nature," *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992) (quotation marks omitted); the same has been held for public universities, *see Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601–02 (7th Cir. 2009). As such, "a student may establish that an implied contract existed between himself and the university that entitled the student to a *specific* right." *Id.* at 601 (emphasis added). While "[a] right established by [this] implied contract . . . can be a property interest subject to constitutional protection, . . . the student must first show that the implied contract establishes an entitlement to a tangible continuing benefit" by "point[ing] to an

---

[6] To the extent that Plaintiffs attempt to additionally argue in their response that the mandatory fees they paid to ISU were then put in some form of trust fund for their exclusive use, thus remaining their personal property, their allegations are simply too vague for the Court to make this inference. Plaintiffs argue that the classification of the mandatory fees as "agency funds" and Defendants' alleged role as "custodians" is sufficient for the Court to infer that Plaintiffs "retained an ownership and interest in these funds, as Defendants, as custodians, were to hold the funds for the benefit of various and specific facilities and services offered and made available to them throughout the course [of] each respective academic term." Pls.' Resp. Mot. Dismiss 15. But the mere allegation that these words appear in ISU's materials is not sufficient to allow for the inference that a legally relevant custodian-owner relationship existed between Plaintiffs and Defendants. And the case law Plaintiffs cite in support of this idea not only involves the vastly different circumstances of prisoner funds but also does not show that prisoners necessarily have a protected property interest in such funds. *See id.* at 15–16 (citing *Eubanks v. McCotter*, 802 F.2d 790, 792, 794 (5th Cir. 1986) (holding only that prisoners' federal claims regarding various funds were "minimally sufficient to require a decision on the merits" but "express[ing] no further views on the merits" of whether the prisoners adequately alleged a deprivation of property rights); *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 901 (7th Cir. 2012) (finding that a prisoner had no protected property interest in the inmates' recreation fund).

*identifiable* contractual promise that the [university] failed to honor." *Id*. at 602 (emphasis added) (sixth alteration in original) (quotation marks and citations omitted). Because "[t]he catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant may become part of the contract," a student may look to such materials to identify a specific promise. *See id*. (quotation marks omitted). "[I]t is not enough for a student to merely state that such an implied contract existed"—he must be specific in his pleadings "about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return." *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi*., 741 F.3d 769, 773 (7th Cir. 2013).

The Court does not find that Plaintiffs have plausibly alleged that a contract existed between ISU and them specifically promising access to every facility and activity for which their fees were intended. Plaintiffs' allegation that they "entered into contracts with ISU, which provided that Plaintiffs . . . would pay the cost of mandatory fees for or on behalf of students, and, in exchange, ISU would provide services related to those fees, such as access to student activities, athletics, wellness centers, etc.," Am. Compl. 19, is merely conclusory and not supported by the factual allegations. The complaint states that the mandatory fees "included fees for general activity, athletics and service, the Redbird Arena, the Bone Student Center, athletic and recreational facilities, health and wellness, instructional support, and campus enhancement," Am. Compl. 9–10; that the mandatory fees were "charged solely to cover the cost of certain on-campus services, facilities, and materials that [were] no longer available to students," *id*. at 11; and that the mandatory fees were "earmarked for services and facilities that were not available to them due to the COVID-19 pandemic," *id*. at 18—all of which suggests only that ISU promised to spend the fees on certain services, not to provide students with access to those services.

15

Plaintiffs also include links to ISU websites, *see* Am. Compl. 5–6, 10, none of which, the Court finds, contains the promises Plaintiffs conclude they do.  A website detailing what mandatory fees will be used for states that "[a]ll students are assessed the mandatory fees on a per-credit hour basis whether or not they opt to take advantage of the services" and that "[t]his is the case for students who are on campus or off campus."  *Outreach Fee*, Office of the Comptroller: Illinois State University, https://studentaccounts.illinoisstate.edu/billing/fees/ (last visited Sept. 23, 2021).  The website describes the fee as "a portion of the cost of attendance at [ISU] to cover administrative costs of having such services available to all students" and lists the services the fee will be used to support, such as athletic services, health and wellness, and the student center.  *Id*.  Again, the only promise which may be drawn from this website is that the fees would be used to cover the administrative costs of maintaining various buildings, services, and programs—operational costs ISU would have even if the buildings, services, and programs were not open to anyone.  Nothing promises that students are entitled to access in exchange for payment.

Plaintiffs also point to a myriad of statements from ISU's website "focus[ing] on the on-campus experience students receive as members of the Redbird community," "boast[ing] that students' strongest connections at ISU will come from their on-campus community," and "stressing the importance [of] its state-of-the-art on-campus amenities to the student experience." Am. Compl. 5–6 (quotation marks omitted).  The Court finds that such promotional materials are, at best, "unenforceable expectations" of what ISU hopes students will experience.  *See Oyoque v. DePaul Univ*., 520 F. Supp. 3d 1058, 1065 (N.D. Ill. 2021) ("As alluring as those statements might be, they aren't *concrete promises*." (emphasis in original)).

16

In the response to the motion to dismiss, Plaintiffs refer to additional materials.[7]  Pls.'
Resp. Mot. Dismiss 15.  A website on ISU policy and procedures shows that student fees are
classified as "[a]gency funds", which "are defined as resources held by the institution as
custodian or Budget Officer for individual students, faculty, staff members, or organizations."
*University Policy & Procedures: 7.6.5 Agency Funds*, Illinois State University,
https://policy.illinoisstate.edu/fiscal/7-6-5.shtml (last visited Sept. 23, 2021).  A PowerPoint
produced by ISU detailing various budgeting issues likewise states that mandatory fees are
"[a]gency [a]ccounts" and that agency funds are "[r]esources held by the institution as custodian
or budget officer for individual students, faculty, staff members, or organizations" and are
"restricted in issue to the specific purpose for which they are charged."  The Color of Money 12–
13, Pls.' Resp. Mot. Dismiss Ex. 1., ECF No. 16-1.  But again, at most these show that ISU made
a promise to use the mandatory fees on the various services specified.  Plaintiffs have failed to
plausibly allege that ISU specifically promised them, in exchange for their payment of
mandatory fees, to provide them with access to these services.  As such, they have not
adequately pleaded they had a contractual entitlement to access to campus services on demand,
nor have they plausibly claimed they "had a contractual entitlement that their consideration
would be returned to them upon Defendants' failure to perform," Pls.' Resp. Mot. Dismiss 22.

This conclusion is in accord with the decisions of several other district courts in the
Seventh Circuit faced with similar (albeit breach of contract) cases about colleges and
universities depriving students of in-person classes and services due to COVID-19.  *See*
*Buschauer v. Columbia Coll. Chi.*, No. 20 C 3394, 2021 WL 1293829, at *6 (N.D. Ill. Apr. 6,

---

[7] *See Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) ("[A] plaintiff is free, in defending against a
motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint,
in order to show that there is a state of facts within the scope of the complaint that if proved . . . would entitle him to
judgment.").

2021) (finding that the plaintiff's "references to the student handbook and other materials describing the student center, health center, or information technology department merely provide information about what facilities and services [the college] provides students, not any specific promises of access to these facilities and services in-person at all times" and that, as such, the court could not "find that [the plaintiff] has sufficiently alleged that his payment of the activity, health center, instruction resource, registration, technology, or U-Pass fees entitled him to on-campus, in-person services"); *Oyoque*, 520 F. Supp. 3d at 1058 (holding that "none of the facts alleged by the plaintiffs" through reference to the university's academic catalog, student handbooks, and marking materials "amounts to a concrete contractual promise to provide in-person educational services, experiences, or opportunities"); *Oyoque v. Depaul Univ.*, Case No. 20 C 3431, 2021 WL 1837399, at *2 (N.D. Ill. May 7, 2021) (noting that the language cited by the plaintiffs was "either aspirational, intended simply to inform students of resources and amenities available to them, or a combination of both"); *Gociman v. Loyola Univ. of Chi.*, 515 F. Supp. 3d 861, 869 (N.D. Ill. 2021) ("[N]one of the materials identified by [the] plaintiffs demonstrate a promise to provide in-person instruction and in-person services."); *Miller v. Lewis Univ.*, Case No. 20 C 5473, 2021 WL 1379488, at *5 (N.D. Ill. Apr. 11, 2021) (stating that "[w]ithout more, [the] notations [in the course schedule regarding the instructional method of each class] are informative rather than promissory and [the plaintiff] cannot transform such statements into a binding contract"); *Polley v. Northwestern Univ.*, Case No. 20 C 4798, 2021 WL 4192076, at *8 (N.D. Ill. Sept. 15, 2021) (finding that the descriptions on the university's website "do not have any language that indicates a guarantee [of in-person instruction] has been made if prospective students accept the offer of admissions").

While other district courts have come to the opposite conclusion, *see, e.g.*, *Doe v. Bradley Univ.*, Case No. 20-1264, 2020 WL 7634159, at *2–3 (C.D. Ill. Dec. 22, 2020) (noting that "[c]ourts have largely denied universities' motions to dismiss on nearly identical breach of contract claims because they found there were sufficient facts to allege a contract for in-person instruction based on university handbooks, catalogs, and brochures" and deciding to follow their example); *Ford v. Rensselaer Polytechnic Inst.*, 507 F. Supp. 3d 406, 418 (N.D.N.Y. 2020) ("What matters at this moment is that [the] plaintiffs have plausibly alleged that [the] defendant specifically promised in its circulars a bevy of in-person academic programs that it did not provide."); *Rosado v. Barry Univ. Inc.*, 499 F. Supp. 3d 1152, 1157 (S.D. Fla. 2020) (concluding that the plaintiff's "allegations that [the university] accepted $773 more per credit for in-person classes from [the plaintiff], and actually provided in-person education to [the plaintiff] until March 19, 2020, in the backdrop of numerous other documents referring to in-person classes and amenities, are sufficient to establish, at minimum, an implied contract"), the Court is not persuaded by their reasoning as it applies to this case.

As Plaintiffs have failed to plausibly allege a property interest in the property of which they claim they were deprived without due process of law, their Due Process claim must be dismissed.

### 2. Takings Claim

The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amend V.  For this claim to survive the motion to dismiss, Plaintiffs must allege that 1) they had a property interest over the property taken and 2) the government failed to justly compensate them for the loss.  *See Knick v. Twp. of Scott, Pa.*, 139 S. Ct. 2162, 2167–68 (2019).  Courts often look to the same principles

when determining whether a property interest exists for the purposes of a takings claim as with a procedural due process claim.  *See Bell*, 841 F.3d at 720 (stating that "[t]he deficiency in [the plaintiff's] takings claim is conclusive regarding her due process claim, as there can be no deprivation of property without procedural or substantive due process of law without an underlying property interest"); *Dyson*, 306 F. Supp. 3d at 1040 & n.4 (citing to *Roth* and *Bell* when analyzing the plaintiff's Takings Clause claim and stating that "[t]he distinction [between what is considered a property interest for the Due Process Clause and for the Takings Clause] does not matter here, . . . as [the plaintiff] has an interest in the use of the property under either constitutional provision").  However, "[t]he Due Process Clause . . . recognizes a wider range of interests as property than does the Takings Clause."  *Pro-Eco, Inc. v. Bd. of Comm'rs of Jay Cnty., Ind.*, 57 F.3d 505, 513 (7th Cir. 1995).  Because the Court finds that Plaintiffs have failed to allege a cognizable property interest under the more inclusive procedural due process standard, the Court also finds that they have failed to allege a property interest for their Takings Clause claim.  As such, the Court dismisses the Takings Clause claim as well.

### ii.  Other Claims

Having dismissed the two § 1983 claims, only the claims for breach of contract, unjust enrichment, and conversion, and the requests for declaratory and injunctive relief, remain.  In the absence of any remaining federal claims, and as the parties are not diverse, *see* Am. Compl. 3–4, the Court declines to exercise supplemental jurisdiction over the remaining claims.  *See RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) ("The supplemental-jurisdiction statute provides that the district court 'may decline to exercise supplemental jurisdiction' over state-law claims if the court 'has dismissed all claims over which it has original jurisdiction.'" (citing 28 U.S.C. § 1367(c)(3))).  As such, it does not reach the question of

whether Plaintiffs have adequately stated these claims against Dietz and Jones in their individual capacities.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Dismiss, ECF No. 11. The Clerk is directed to enter judgment and close the case.

Entered this 30th day of September, 2021.

s/ Sara Darrow
_____
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
